Good afternoon, Your Honor. Timothy Dwyer, the accused in court, counsel for the defendant. We're here today on a two prong issue with regards to section 121 75 of the property tax code. An issue on the first prong, Your Honors, is whether or not a petitioner who was entitled to a homestead exemption but did not receive that exemption can go back once he obtains or she obtains a certificate of error and petition the county clerk for a refund under 21 75. We believe that that's the case. The trial court decided differently. The trial court opined and held in that order that there was an application requirement to be made before one obtains a homestead exemption of limited. And in doing that, the trial court referenced two statutes, not the actual statute of issue, which is 15 175. Incidentally, 15 175 is different from 170 and 172, which deals with senior exemption freezes and senior freezes in that it doesn't actually call for an application. In fact, the language says that a homestead exemption is entitled to a limited homestead exemption. Now, that entitlement language showed up, I believe, in 1992. And again, that's critical in this case, too, because the trial court, in her opinion, referenced the attorney general opinion that the defendant submitted as incorporated into their 2619 motion to dismiss. Now, if you look at those two AG opinions, the 2008 AG opinion just concludes that one must apply for a homestead exemption limited and references, as a precedent for that conclusion, the 1982 informal AG opinion, which basically makes that conclusion. It's critical to understand in that context that in 1982, the entitlement language did not appear in the actual statute. Equally significant, at the end of the 1982 statute on homestead exemptions, there was language in there that said, excuse me, Your Honor, it said in lieu of exemption procedures found elsewhere in this Act, the supervisor assessments or the accounting personnel responsible, the Board of Review, can adopt regulations that can either make an application requirement for a homestead exemption by the form of a questionnaire, visual inspection, or other reasonable methods. That language was also changed, and in the 2008 statute, which is applicable to our case, it says in all counties. It doesn't reference other aspects of the Act with regards to application requirements. So our position is that the AG opinions are not persuasive at all, and there is no requirement for a homestead exemption limited. Doesn't 1510 say that an application shall be filed as indicated in 175 and 176? Actually, I think it referenced 170, 172, 175, and it says it shall be filed as prescribed by those sections. Now, 170 and 172 clearly prescribes an application requirement. 175 has none. And I think equally important, Your Honor, is that prior, in 15-5, it says that all submissions shall be in writing or by application except for, and that references sections 15-165 to 15-180. So there's a conflict, an outright conflict, between 15-5 and 15-10, but the issue is that these are secondary statutes in reference to the actual language of 15-175. That says there's an entitlement. And it's interesting because that entitlement language has shown up both in Law v. County Cook and in Source v. Armstrong. In both cases, both appellate courts said that in 1987, Petitioner Ball applied for a homestead exemption application for which he was entitled. Both cases say that. The language of the statute says that. There's no question that 15-10 says that the application shall be filed as prescribed by the other statute. There certainly is no prescription in 15-175 for an application. Now, there's the ability for the Supervisor of Assessments or for the Board of Review to adopt regulations mandating that a requirement be made. Mandating that an application be made? Thank you. Yes. That does not exist. Is that what Cullerton's talking about in this legislative history that was given, that different counties are adopting their own regulations for the filing of an application? Your Honor, it's difficult for me to sit here and tell you what Cullerton was thinking, what he said and what he said. I can't tell you that the property tax code was initially adopted in the state of Illinois in 1939. And in every legislative session, it's tinkered with. And what happens is that a paragraph, a sentence is added here and there, and then sometimes it's hard to reconcile. I know that in 1994, the Illinois General Assembly had a committee that basically tried to reconcile all aspects of the act. And that would be after the Cullerton Amendment was in 2002. But just by the language of 15-5 and 15-10, I mean, right next to each other, you have these seemingly obvious conflicts. Do you find that to be an ambiguity, then? Do you think these statutes taken together are ambiguous, or are they not ambiguous? I don't. I think that the trial court was looking at the secondary language of these statutes. Like I said, in 1982, when the AG made that opinion, the last sentence in the homestead, now 15-175, I believe it was 120-523-1A. The last paragraph, and it was much shorter also, the last paragraph said, in lieu of the exemption of the application requirements found elsewhere in this act. Again, between that time and the present lawsuit, that language was deleted. And now it says, in all counties, the appropriate personnel, the supervisor of assessments and the board of view, whoever, has the ability to draft regulations for these application issues. So I don't think it's ambiguous in terms of this issue. I think that clearly there's a conflict between 15-5 and 15-10. But I don't quite understand why the trial court would be looking at secondary statutes in order to plainly interpret the actual statute itself, which is unambiguous on its face. Likewise, in addition to citing 15-10, the trial court looked at section 16-70, which is a completely different article entitled Review of Assessment Decisions. And the main thrust of 16-70 is basically exempt property for 501c3 corps, governments, where they petitioned, a government buys a property, 501c3 buys an apartment building for refugees, and then they petitioned the board of review for an exemption to make the property completely exempt. And the board of review makes a decision, but that's just initial. What they do is they send it down to the Illinois Department of Revenue, and then the Illinois Department of Revenue makes the final decision. All 16-70 says is that for purposes of these exemptions, the board of review's decision is not final except for homestead exemptions. I had the privilege and honor of serving on the King County Board of Review for three years. Not once did I ever see an application for a homestead exemption that was adjudicated pursuant to 16-70. That statute is almost entirely for exempt properties for governments, 501c3 corps, et cetera. It has nothing to do ñ how can we cite 16-70 for the idea that, obviously, a written application has to be a petition to the county and Illinois Department of Revenue to make a property exempt? How can we use that section to say that somehow, tangentially, there is an application requirement for a homestead exemption when it's under a completely different statute, under a completely different article that's unambiguous on its face? I don't find that to be very persuasive. And those are the two statutes that the trial court relied upon. The trial court never addressed the fact that the plain language of 15175 says there's an entitlement. The trial court never addressed the Ball v. County of Cook and Storrs v. Armstrong when those courts said the petitioner is entitled to the homestead exemption as delineated by the Act. There simply is no application requirement. Is there a requirement that there be a certificate of error for each year going back five years? I don't see how that's possible in King County. Apparently, it's possible in Cook County as it relates to 1987 and 1989. But the county and the attorney general have taken the position that they will not issue a certificate of error once in, usually it's in March, when the assessment books are finalized. What they say is that the certificate of error is only good for the year in question. Unfortunately, the facts as delineated in the Ball case don't give us an insight as to how, in 1990 or 1993, Mr. Ball and other taxpayers went back and got a certificate of error. But I think, Your Honor, that it's not, I think it's a technicality in terms of whether or not a certificate of error is required under 2175. Because I think that question was answered by both Ball and Alvarez. And in Alvarez, basically, they went through the entire statute. And, you know, I don't even think they had to because there was a five-year limitation. And whether or not the statute applied really didn't matter because it was clear that it was filed after five years. But nevertheless, they went through. And they went through the legislative history and the 1975 amendments. And they took apart 2175. And clearly, Justice Kilbride dissented. He said, you know, why are we doing this? First of all, it only applies to erroneous taxes. And 2175 makes that clear. But six members of the Supreme Court disagreed. And they went through it. And it was important how they did that. And first of all, they addressed the issue of overpayment. And they said in U.S. v. Donald, and they said a taxpayer makes an overpayment when he overpays what is due for whatever reason or no reason at all. And then the court went on in this overpayment context and said, you know, it's difficult to see how someone can get a tax bill, pay it, and then say it's overpaid. But the court said that's not the important issue. The important issue is the fact that the tax bill was erroneous because the assessment was erroneous. And what was paid was not owed at all. And then the court went into the legislative history. And there the court clearly said, you know, looking at this, these claims will be barred by the voluntary payment doctrine unless the statute provides otherwise. We think that the General Assembly made 2175 to cover an omission whereby, you know, refunds for all the payments or erroneous assessments are not present. And what they did was they said clearly in 2175 they concluded, you know, we must construe this statute as permitting refunds for erroneous assessments or overpayments regardless of whether or not they're erroneous. I think that both the litigants in the Alvarez case and even Justice Kilbride in the dissent and certainly the majority agreed that 2175 is covered with regards to erroneous assessments. But the court went further and said, you know what, we're covering mistaken overpayments. And that's what they did. They covered a mistaken overpayment. And that holding was absolutely clear. It's interesting because Ballers County Cook was pending while Alvarez was also pending. And there was a motion by the city to stay the case and subsequently to supplement the briefs based upon Alvarez. And the court granted that motion. Only one side of the city filed a supplemental brief. The appellants did not. But the Ball case said held that in the property tax code, the statutory remedy for refunds of erroneous assessments or overpayments appears in Section 2175. And that was based upon Alvarez. And then the appellant in Alvarez said, no, wait a second. These issues with regards to homestead exemptions, which are entitled, don't fall under the express provision of 2175. They're not twice assessed, nor are they assessed before they became taxable. The Ball court addressed that on its face and said the Alvarez decision destroys that analysis. It says we must construe Section 2175 as permitting refunds of overpayments or erroneous assessments regardless of whether or not those assessments were erroneous. So the trial court uses that language in order. It says, you know, this doesn't fall under that category. And at the same time, there's this application requirement. I submit to this court that the application requirement does not exist. And the reasoning is flawed in view of Alvarez in County v. Cook. If the application requirement doesn't exist, how is the assessor or the supervisor of assessments supposed to know that there's a homestead exemption on that property? That's an excellent question, Your Honor. And I think, you know, it's one for the county, not for me. But the fact of the matter is that I've had five homes in King County, two different townships. I've always had a homestead exemption. I've never applied for one. And I've sat on the Board of Review. And you've had homestead exemptions on only one at a time? Yes, Your Honor. Well, you can only have one on one at a time, theoretically. Well, how did they know which one, or put another way, did they know which one you were homesteading? I don't know what the county knew or didn't know. You mean you received tax bills on five parcels and you didn't see whether or not there was a homestead exemption on it? Oh, sorry, Your Honor, just one at a time. My wife likes to move. I didn't have five separate households. You didn't have five separate houses simultaneously. You had one house after another. No, sir. If I did, it would be incumbent on me to report to the county that I only live in one. I'm only entitled to the – the statute is absolutely clear that I'm only entitled to the homestead exemption for which it's my principal residence. And how is the township or the county or the state supposed to know that? Well, the state doesn't – is not a player. The state's not a player in that analysis. Well, when I said the state, I meant you live in DuPage County and you have a second residence down south. I see. And so you have two residences. Which one is your homestead? And that's why the statute allows the county to make regulations for you to apply or not apply. Other than regulations that they would make you apply for, basically the statute says it's incumbent upon the supervisor of assessments or the chief officer to determine how that's done. I submit to your honor that it's done differently in different counties. Also, I think what's critical – I don't know if it's critical, but it's interesting in reference to Kane County that in the mid-2000s there was a computer error which basically destroyed all the homestead exemptions. And, you know, right now Kane County has tens of thousands of homestead exemptions. I think – I might be wrong – I think that there's an assumption that if someone buys a house that they're going to live there. I don't know if that's a rebuttal assumption. I don't know. I don't like it. Just briefly, what's your argument on Smith, which is a little different than others? It is, your honor. My argument on Smith puts me in kind of a tenuous position in that I'm standing before Justice McClaren who wrote the Source case. And basically if the court were not going to reconsider Source, Smith is out of the box. Smith doesn't have a homestead exemption at issue. What she has is an erroneous assessment. She built her house in 1999, and for whatever reason the property record card is erroneous. Up until when she got a certificate of error ten years later in 2009, she paid taxes on improvements that did not exist. When she found out, she tried to go back. Do you agree with the majority in Source? I don't, your honor. For the same four critical components of the Alvarez case that I gave you. In Source, what the court said was that, you know what, if the tax bill is calculated incorrectly, that doesn't make it erroneous. I would submit to your honor that that does not comport with both Alvarez and Ball. That there's a serious conflict. For the same four component reasons that I articulated earlier in this argument. The idea of overpaid, the express language of Alvarez which said that it's not important that it's paid or overpaid. What's important is that it's erroneous and that it was not owed. They specifically said that, and I think that applies to Smith. And then the whole idea about this 2175, the changes there, basically is a caveat. It's an exception to the voluntary payment doctrine. And then the ultimate holding, which on its face, none of those four components were addressed in the Source case. And I don't know how you can actually adjudicate whether or not Alvarez applies. Clearly, the Source case said that Alvarez doesn't say what I think it says. But I don't know how you can make that determination without analyzing those four components of the case. Those are critical. If I understand your argument, then virtually any defect can be brought up five years after the fact, correct? What do you mean by virtually any defect, Your Honor? Well, virtually any defect that you claim is an erroneous payment will be subject to five years of recapture. Am I wrong? I mean, that seems to be what you're saying. No, I think that you have to come into court and prove that you have an erroneous tax bill. I think that Plaintiff Smith has done that on its face. And I think that the Certificate of Error memorializes that. The provision in the tax code says that you can use the Certificate of Error as evidence in a court of competent jurisdiction. Clearly, she was taxed and paid for property that she did not own. Now, the limitation is five years. And the limitation also runs to when she paid taxes for those. So, really, under the fact that the complaint was filed in October of 2009 would only give her three years of back taxes. I'm not sure that I understand you because it sounds to me like all you've really said is any erroneous instance of either a tax rate or an evaluation or a computation that relates to the evaluation or any mistake that relates to any exemption that anybody would be entitled to or any benefit would be subject to five years of recapture under Algorithms. And all you really have to do is go into court and prove up five years of mistakes. Now, you claim that a C of E might be some sufficient evidence of at least one year and possibly more. But are you not saying that every single possible reason for an erroneous payment is subject to five years of recapture upon proof? No, Your Honor. I think that the tax rate and the levy issues can only be adjudicated. They're erroneous, are they not? Yes, Your Honor. But I think they can only be adjudicated under Section 23 of the tax code, which basically says that you can only come in there for the error question and it covers those issues. I think what can be obtained under Algorithms for the five-year limitation is found in the tax code where the government can go back for omitted property and does all the time. And that's defined by three sections of the tax code. I think one is 9, 365. I think the other one is 14, 41. And, Your Honor, I forget the third one off the top of my head. But those sections define administrative error and include defective or erroneous assessments as the basis for the government to come back under omitted property. And it's curious because in those sections there is no statute of limitations. In King County they've taken the position that they can do that for seven years. There's another section of the statute in Article 14, which seems to indicate that a chargeable lien by the state on omitted property, they can go back for 20 years. So I think that's unclear. But the issues to try to answer your question that can be obtained, I think, under Algorithms are the same as those issues that can be obtained by the government with respect to omitted property. And those include a defective assessment, an erroneous assessment, and some type of mathematical error. For example, if the government did not include one taxing district on, say, my tax bill and they discovered that three years later, they can go back under 9, 365 and say, you owe us three years of taxes for this taxing district. That's undisputed. It happens all the time. And quite frankly, the taxpayer has a recourse. They send you a bill, and if you don't pay it, your property goes into a tax sale. So I think that it's not any defects. For example, a levy rate. I think that it's those that the government can do. But I would grant you that Algorithms doesn't answer that question specifically. And neither does Ball. But clearly, both of those cases say that. Any other questions? Finish up, please, because you've gone way over your time. I'm sorry, Your Honor. It's okay. We were asking you questions. But the point is, we don't have any more questions. And I have 10 minutes of rebuttal, right? Or do I? Yes, you do. Well, then, thank you very much. Thank you. Good afternoon. May it please the Court. Assistant State's Attorney Joseph Lalvas on behalf of the King County government defendants. This is not unclear, and it's not ambiguous at all. As the trial court noted in its opinion, the statutes on your face refer to applications. And as the Justice pointed out, in the real world of tax collection, if we're not given notice in writing, how are we going to know who's entitled to an exemption? How literally would they know? This would open the door to five years' worth of throwback for people to come in and totally circumvent the administrative process. Because I'll note that the sections referred to all refer to certificates of error and other things like that. Well, those are all subject to time limitation periods to apply to the Board of Review, which has the exclusive jurisdiction to determine those matters. So this would, in effect, what they're asking for is to have a no-application requirement and to have a free-form catch-all five-year period that they can go back on. Doesn't 15175 talk about people getting the exemption based upon application or a number of other methods of getting the exemption? Yeah, that's correct, at the discretion of the supervisor of assessments. So why would an application be necessary if it can be through something else? As a practical matter, in a county with approaching 200,000 parcels, the statute refers to visual inspection. To be honest, Judge, that's not going to happen. Supervisor of assessment can't view every property or question every property owner. More importantly, are you the owner-occupier? And, frankly, King County government and governments statewide and nationwide do not have the personnel or the revenue to conduct individualized personal phone calls or examinations of property owners. I would suggest to the Court that the property code in general visits upon property owners' substantial responsibilities. You're responsible for paying your tax bill even if you don't receive the tax bill, for example. In this case, applications must be made. The Board of Review is the final authority on application. Without an application, it becomes a rudderless ship. There is no standard then. There is no way for the supervisor of assessments who does not have the personnel or the legal authority to start questioning people in their homes. They have to take a preferable step. I'd like to point out that I do believe that all the cases that counsel has cited and that were cited in their briefs, I'm unaware of reading any of them since there's no sort of proposition reading out an application requirement. The Ball case was talking about people in Cook County who had certificates of fair and hadn't gotten their money from Cook County local government. That was the issue in Ball. Nowhere in Alvarez or anywhere else did anybody say that, well, gee, anybody can just sit on their hands, not apply for an exemption, not apply to Board of Review within the statutory administrative time period for review, sit on your hands for three or four years, and then just have a copter ran under 175 and see what's kept on. Doesn't Alvarez say that, though? I don't believe it does, Judge. What does Alvarez say as far as you're concerned? As far as we're concerned, Judge, Alvarez stands for the proposition that the government determines through the administrative process are if there's an error in the assessment. Alvarez specifically stated that simply paying your taxes, the tax bill you get on the assessment, is not an overpayment even if the assessment was incorrect. You got your bill, you paid it. That's exactly the situation here. These people got their bill and they paid it arbitrarily. What do you mean it's not an overpayment? Well, they haven't overpaid the bill. They received the bill and they paid it. So you're saying you kind of agree with Sorcey that said if it's not over 101 percent of what the tax bill is, then you haven't overpaid? Correct. I don't believe we have. I think that the tax bill you get, the way you challenge that to determine whether or not there's an error or it's erroneous is through a certificate of error. What about Mr. Smith and his tax on property that he doesn't own because the legal description was in error? He's got a timeline to every year appeal that to the Board of Review. And judicial review of that is not available unless he has exhausted his administrative remedies. And that's an administrative remedy that's available to everyone. I grant the court that the property tax code is a harsh place to operate and there's a very short statute there for people to file for that. But I would suggest that the necessity of funding ongoing government operations requires such a short time period. Does the certificate of error in the Smith case particularly show that the assessment was erroneous? In the Homestead cases, if you have to apply for it, if that's a requirement, then a certificate of error, if somebody hasn't applied for it, I certainly would understand the argument that that doesn't necessarily compute to an erroneous assessment. But with the Smith case, when we're talking about square footage of property that's being assessed that's not there, I mean. It's simply a tax objection. I believe the Leaf Blank case addressed that. An error in assessment is simply a tax objection. Tax objections are not limited to, say, just rates. Square footage is a tax objection, your objection to your assessment. You're saying there was a mistake made. There are administrative periods and closure periods there to appeal that. So I believe that if you don't apply or do anything, you sit on your hands. No, the window is closed. Even under 2175? Yes. For an overpayment? Yes. Yes, I believe that's true. I'm talking about Smith now. I'm not talking about the Homestead cases. I'm talking about Smith particularly. I believe that's true. I don't think that the Alvarez went so far as to say that you can just sit on your hands and do nothing and then just come back with an open-ended five-year period. I don't believe that Alvarez went that far. I just don't read it as being that expansive. Mr. Dwyer said something about certificates of error are cut off in March. That's just incorrect, Judge. Certificates of error can be issued up until the time that we obtain final judgment. For that particular year's taxes? Correct. For that particular year's taxes? Correct. That's correct, Judge. And that takes place, generally speaking, late October. Well, okay. How would anyone ever get a five-year payback under how you're arguing? I'm just curious. I mean, why do we even have this five-year statute that you get money back? I think Buddy Ball underscored that, Judge. In Cook County, where people had turned up and issued certificates of error, and, frankly, local government officials had never given them credit on their tax bill or given them any money. There's the wrong that I believe the 175 is there to try to address, where local government officials issue certificates or corrective documents, and then the public has got something. They never get credit for that. And that's what happened in Ball, and I believe that's what 175 is there to correct. 175 in the homestead context explicitly refers to certificates of error. If a certificate of error is issued on a homestead, and then you can go back five years. But that's not the case here. They have received credit for all these certificates of error that they applied for. What they're asking for here is to go back five years to a period where they did nothing. So this is totally different than the Ball case, or I believe that the evils that 175 were meant to address. Specifically for them to avail themselves, I believe here, of 175's protections, they have to adopt the position that an existing certificate of error can now be used across tax years. And as we pointed out in our brief, we believe that's just completely incorrect legally and has been in Illinois for many, many decades. Have people been known to pay their taxes more than once? I'm sure they have, Justice. I personally can't speak to that. I'm assuming they have, especially in an era where you have vast automated payment systems. The days of people coming in with their check or anything are long gone. You've got mortgage brokers and mortgage companies that file electronic payments. And frankly, they get sometimes goofed up. And sometimes they won't pay twice. And sometimes the person won't get a straight answer from their mortgage company as to whether the taxes are being paid or not being paid. And a bulk payment that's delivered electronically, and being concerned they might very well come in and pay the taxes themselves, and there you've got your double payment easily. Suffice it to say, subject to any other questions from the court, the government defendants suggest that what they're asking for here would simply rip out about a third of the tax code and put it on the side of the road. And therefore, we're requesting their appeal be denied. Thank you. Thank you. Counsel, can I start you off with a question? Thank you, Your Honor. Can Smith's certificate of error be used to cross tax years? On its face, Your Honor, no. Basically, you'll see different township assessors use different procedures for a certificate of error. For example, the St. Charles or the Blackberry township assessor will come in with documents, and those documents just happen to go back usually two or three years, and they delineate what was done in the last three years. All the township assessors don't do that. It's incumbent upon a plaintiff under 2175 to come into the court and prove to the court's satisfaction that the assessment was erroneous for that time frame. In looking at these, I've seen some that have gone 20 years for assessing property which didn't exist. You only get five years back from where your tax payment was made. Your certificate of error occurs one year. So at the most, you could possibly get four years. Does that answer your question? I heard counsel say that the relief that plaintiffs requested would eviscerate one-third of the tax code. I would like to know which third it would. It doesn't change anything about Section 23 or a tax objection. And I think, Justice Burke, you asked a question which I had just written down, and that's why does 2175 have a five-year statute of limitations? What does it apply to? Alvarez answered that question. It applies to erroneous assessments or overpayments. They said that categorically. Now, to say that that eviscerates one-third of the tax code is simply not true. It has absolutely no effect on the tax objections in Section 23. Those are clearly for only the year in question. Counsel for the defense came up here and said, you know what, least bad answers the question in that the voluntary payment doctrine exists, that it's simply a tax objection. Well, no, it's not. If it's a tax objection, then it's a mere surplusage, and it's worthless. Why does it have a different statute of limitations, and why does the Supreme Court say this is what it means? They actually went through the statute and said it's ambiguous, this is what it means. And I need to take part of my time in this to read these two sentences to this Court. Thus, in many, if not most cases, taxpayers will not be able to receive refunds of overpaid taxes due to the existence of the voluntary payment doctrine. They recognize that, right in their opinion, straight out, flat out. Yet, the purpose of the amendment, and they're referring to 2175, was to remedy an omission in the property tax laws and give taxpayers the right to claim refunds of their overpaid taxes. Thus, we must construe Section 2175 as permitting refunds of overpaid taxes regardless of whether any erroneous assessment of property is involved. Counsel for the Defendant just came before this Court and said, Alvarez only applies to erroneous assessments. No, it doesn't. There was no erroneous assessment in that case. It was a mistaken overpayment. Nowhere in Alvarez did any litigant come up and say the tax bill is wrong. The Court said this applies to a much broader purpose pursuant to the 1975 amendments. They said that. If there is an application requirement, I mean, if we find there to be an application requirement for homestead exemption, there was no overpayment in these cases, correct? Your Honor, well... Because they didn't receive it, they didn't apply for it, they were just taxed normally like the house that they weren't living in. That is an excellent question. Certainly the trial court took that position. I would take the position that there is no application requirement. I know that. I can see where the Court would say, if there is an application requirement, you waived your right. No, you haven't. You can come in in 2010 and you can say, I forgot for five years. Why don't you give me an exemption for 5, 6, 7, 8 months? Well, Your Honor, if it were that simple, that would be fine. I can see your point. But it's not a question of forgetting. Nobody says, oh, jeez, I have a homestead exemption to apply for and I forgot. The fact of the matter is that 99% of the taxpayers don't even know they get one. They don't even know how to apply. Nobody understands the process. Nobody understands that they're taxed. If you ask somebody, what's your taxes based on? They would say, well, you know, you might get someone who's, say, like a lawyer, of a levy, the levy rate. No. The levy rate is just part of the process. Your taxes are based upon your assessment. What is your assessment based upon? It's your property tax record card. Your taxes are based upon your assessment and your tax record. Exactly. But. Not based upon your assessment. Because if your assessment goes up, your rate can go down. And your taxes can go up. Or go up or go down, depending on what the product is due. That's absolutely right. And the main component of that, your assessment, is based upon your property tax record card. Very few people know they even have one. They don't. The assessor does. Yeah, but they can look at it any time they want. It's a public record, but it doesn't belong to them. It does not. It belongs to all the taxpayers. Do you agree with this? 15.175 says that in all counties, the assessor or chief county assessment officer may determine the eligibility of residential property to receive the Homestead exemption. And the amount of the exemption by application, visual inspection, questionnaire, or other reasonable means. Absolutely. If they publish a notice in a local newspaper that you're entitled to file an application or apply for a Homestead exemption by a certain date, would that satisfy the statute? I don't know. Perhaps it could, Your Honor. That's certainly not on the record, and they haven't done that. In fact, what counsel said was that you have to apply in King County for a Homestead exemption, but they haven't given us any applications. All they have to do is have an affidavit by the county supervisor of assessments and say you have to apply, and here's the process. The fact of the matter is there is no process, and there is no application requirement. They can't point to one. It's not in their regulations, and they haven't produced it. In fact, on a motion for reconsideration, Your Honor, I asked the court to replete and amend a complaint. The fact that the majority are just given a Homestead exemption by caveat, but by whatever ‑‑ I don't know the methodology. Did you say caveat? I didn't mean to say caveat, Your Honor. Mathia? Thank you. They're just given one. And then the minority, the people who don't have the Homestead exemption, when they pursue, they say, oh, my taxes are too high. And they go to the township assessor, and the township says, oh, you don't have a Homestead exemption. Do you live there? And they say, yeah. They say, well, listen, you've got to fill out this form, and you've got to go to the county. And that's where my learned adversary has come to the court and said, look, here's the application requirement. It's not an application requirement. It's someone who doesn't have one, found out they didn't have one, and has to file for a certificate of error. That's what's going on. So I submit to the court that there is no application requirement. In the event that the court finds one, I still think that I'm allowed to plead that the counties waive that. They don't enforce it. There's no regulation. There's no methodology. They give all these people their Homestead exemptions by fiat, and the minority don't get one. They're entitled to one, or they're entitled to some type of process. There is no process. You either have one or you don't have one, and there are no applications, believe me. I think that's critical. The whole idea that LEAFBAD, LEAFBLAD, involuntary payment doctrine covers this issue simply runs contrary to our Supreme Court in Alvarez, and I think that's absolutely clear. Thank you very much.